IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:25-cr-00138 |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| | ) | 33 U.S.C. § 1319(c)(2)(A) |
| ALLWASTE ONSITE LLC | ) | |
| d/b/a/ | ) | |
| ONSITE ENVIRONMENTAL | ) | |

# INFORMATION

THE UNITED STATES CHARGES:

At all times material to this Information:

## I. Background

1. The defendant, **ALLWASTE ONSITE LLC D/B/A/ ONSITE ENVIRONMENTAL ("ONSITE ENVIRONMENTAL"** or **"ONSITE"**) was a limited liability company registered in the State of Tennessee. **ONSITE**'s principal business address was 1501 Baptist World Center Drive, Nashville, Tennessee.

2. In approximately August 2019, American AllWaste LLC formed **ONSITE ENVIRONMENTAL**, which then acquired certain assets from a predecessor company, Combs Industrial Services. **ONSITE** thereafter operated as a wholly owned subsidiary of American AllWaste LLC.

3. **ONSITE ENVIRONMENTAL** operated waste processing plants in Tennessee, including one in Nashville ("Nashville Facility"), Chattanooga, and Memphis. **ONSITE** advertised itself as a company engaged in "responsible waste management" that protected the environment. **ONSITE** charged customers a fee to treat customers' waste streams in compliance with all relevant environmental laws.

4.  **ONSITE ENVIRONMENTAL**'s functions at its Nashville Facility included the treatment of various non-hazardous liquid waste streams, including landfill leachate, oily water, grease trap waste, cutting and stamping oils, and other liquid wastes. After treating the waste streams, **ONSITE** was authorized to discharge the treated waste streams to the Nashville sewer system pursuant to a pretreatment agreement with the Metropolitan Government of Nashville and Davidson County ("Metro"). Metro was a governmental, municipal, and public corporation created under the constitution and laws of the State of Tennessee.

## II. The Clean Water Act

5.  The Federal Water Pollution Control Act, Title 33, United States Code, Sections 1251 *et seq.*, commonly known as the Clean Water Act, prohibits the discharge of any pollutant from a point source (defined as any discernable, confined conveyance) to waters of the United States except in compliance with a permit issued by the U.S. Environmental Protection Agency ("EPA") or by a delegated state under the authority of the Clean Water Act, Title 33 United States Code, Section 1311(a).

6.  EPA has delegated the responsibility for the implementation of the Clean Water Act in the State of Tennessee to the Tennessee Department of Environment and Conservation ("TDEC"). Metro's sewer system was a "Publicly Owned Treatment Works" ("POTW"). TDEC issued a permit to Metro that, among other things, authorized the discharge of pollutants from its POTW to the Cumberland River. To protect the POTW from discharges by industrial users, TDEC has approved Metro to administer a local pretreatment program for industrial users of its POTW under 40 C.F.R. 403.9. The Metro Department of Water and Sewerage Services was responsible for oversight of Metro's Pretreatment Program.

7. **ONSITE ENVIRONMENTAL** received a pretreatment permit from Metro, Industrial Permit CP-0219 (the "Permit"), which authorized the Nashville facility to discharge treated liquid wastes to Metro's sewer system. The permit set limitations on concentrations of various pollutants that **ONSITE** was permitted to discharge into the sewer system. These limitations were important to ensure that Metro's sewer system and wastewater treatment plant could properly operate without being obstructed, overloaded, or otherwise harmed. The permit requirements included a prohibition on, among other things, bypasses of **ONSITE**'s treatment processes. "Bypass" was defined as "the intentional diversion of waste streams from any portion of an industrial user's treatment facility."

8. **ONSITE ENVIRONMENTAL**'s treatment processes at its Nashville Facility were connected via pipes to an open flume which flowed into the Metro sewer system.

### III. Pretreatment Violations

9. **ONSITE ENVIRONMENTAL**'s plant manager and the assistant to the plant manager at the Nashville Facility directed employees to intentionally bypass its treatment of waste streams in an unpermitted manner and discharge untreated industrial waste into the Metro sewer system. On some occasions, the plant manager and his assistant directed employees to bypass treatment processes due to inadequate capacity to treat the volume of wastes received at the Nashville Facility. On other occasions, **ONSITE**'s plant manager and his assistant at the Nashville Facility directed employees to bypass treatment processes due to broken and malfunctioning equipment. For example, a decanter used to remove solids from food processing waste was broken at times. Nonetheless, **ONSITE** continued to receive multiple truckloads of thousands of gallons per day of food processing waste for which it was paid to properly treat and dispose. As a result, **ONSITE** employees at times bypassed the decanter process and discharged the untreated food

processing waste directly to the Nashville sewer system. At times, that untreated waste was so viscous that **ONSITE** employees had to dilute the bypassed food processing waste with less viscous landfill leachate it to make the untreated food processing waste flow into the POTW.

10. To monitor **ONSITE ENVIRONMENTAL**'s compliance with Industrial Permit CP-0219, Metro installed sampling equipment at the Nashville Facility and in a manhole immediately downstream in the sewer from **ONSITE** and the Nashville sewer system. The sampling equipment was designed to take composite samples of **ONSITE**'s discharges to the Nashville sewer system.

11. To conceal the bypassing of the required pretreatment processes, the plant manager and his assistant, on one or more occasions, tampered with and caused other **ONSITE ENVIRONMENTAL** employees at the Nashville Facility to tamper with the sampling equipment installed by Metro to monitor discharges into the Nashville sewer system.

## COUNT ONE

THE UNITED STATES FURTHER CHARGES:

12. The allegations contained in Paragraphs 1 through 11 are incorporated and realleged as if fully set forth herein.

13. From on or about December 5, 2022, to on or about December 22, 2022, in the Middle District of Tennessee, **ONSITE ENVIRONMENTAL** knowingly violated a requirement of a pretreatment program approved under Title 33, United States Code, Section 1342(b)(8), namely, a prohibition on unpermitted bypasses, which was defined as the intentional diversion of waste streams from any portion of an industrial user's treatment facility.

All in violation of Title 33, United States Code, Section 1319(c)(2)(A) and Title 18, United States Code, Section 2.

4

## COUNT TWO

THE UNITED STATES FURTHER CHARGES:

14. The allegations contained in Paragraphs 1 through 11 are incorporated and realleged as if fully set forth herein.

15. From on or about January 4, 2023, through on or about January 17, 2023, in the Middle District of Tennessee, **ONSITE ENVIRONMENTAL** knowingly violated a requirement of a pretreatment program approved under Title 33, United States Code, Section 1342(b)(8), namely, a prohibition on unpermitted bypasses, which was defined as the intentional diversion of waste streams from any portion of an industrial user's treatment facility.

All in violation of Title 33, United States Code, Section 1319(c)(2)(A) and Title 18, United States Code, Section 2.

ADAM R. F. GUSTAFSON
ACTING ASSISTANT ATTORNEY
 GENERAL
ENVIRONMENTAL AND NATURAL
RESOURCES DIVISION

*/s/ Matthew T. Morris*
Matthew T. Morris
Senior Trial Attorney
Environmental Crimes Section

ROBERT E. McGUIRE
ACTING UNITED STATES ATTORNEY

*/s/ Stephanie N. Toussaint*
Stephanie N. Toussaint
Assistant United States Attorney